## RILEY v. THE BANK OF ALLENDALE.

1. ACCOUNTING—WAIVER.—Defendant bank did not relax or waive the terms of the contract in question while contractee could pay it, and should not be required to account for any more than collected.
2. FINDINGS by Circuit Judge as to indebtedness of plaintiff to defendant at certain date, sustained.
3. ACCOUNTING—VOUCHERS.—FINDING of Circuit Judge as to amount due plaintiff, modified; but dissatisfaction is expressed with accounting of defendant, because no vouchers were produced for payments.

Before BENET, J., Barnwell, July, 1899.    Modified.

Action by M. M. Riley against The Bank of Allendale. Defendant appeals.

*Messrs. J. O. Patterson* and *Bellinger, Townsend & O'Banon,* for appellant.

*Messrs. Robert Aldrich* and *J. E. Allen,* contra.

March 30, 1900.    The opinion of the Court was delivered by

MR. JUSTICE POPE.    The action was brought against the defendant bank for an accounting, and came on for hearing before his Honor, Judge Benet.    By his decree he found the defendant was indebted to the plaintiff on the 3d day of July, 1899, in he sum of $714.74, with interest from that date.    The defendant has appealed from said decree on the following grounds: "1. Because his Honor, the presiding Judge, erred in finding as a matter of fact that defendant, without the knowledge or consent of the plaintiff, relaxed the terms and conditions of the first timber contract, by extending the time of payment upon Woodward giving additional security in the shape of chattel mortgage and stock in manufacturing company, and in holding that the defendant became liable to the plaintiff for the entire amount due by Woodward on said timber contract, whether the same was collected or not.    2. Because his Honor, the presiding Judge, erred in finding as matter of fact, that the second timber contract was not intended to replace the first contract, and covered timber not embraced in the first timber contract; whereas, he should have found that the second timber contract was intended to operate as a recision of the first contract and take the place thereof.    3. Because his Honor, the presiding Judge, erred in finding as matter of fact that the plaintiff claims, and that her contention is sustained by the evidence, that her indebtedness to the defendant on the 17th day of April, 1894, was $1,093.70.    4. Be-

cause his Honor, the presiding Judge, erred in finding as matter of fact that the plaintiff surcharged the defendant's account, and that her objections to said account are well taken; whereas, his Honor should have found that the sworn statement of account introduced in evidence by defendant should be taken and deemed as a correct and true accounting until surcharged by the introduction of testimony to show error therein.    5. Because his Honor, the presiding Judge, erred in finding that there was no testimony to sustain the charges of $186.50 paid to Richie Riley and others, and the charge of $15 attorney's fee, and in holding that these items should be stricken out; whereas, his Honor should have held that these items contained in the sworn statement of account introduced by defendant should be accepted as correct until surcharged by evidence.    6. Because his Honor, the presiding Judge, erred in holding that no credit was allowed for the $55 that the saw mill sold for.    7. Because his Honor, the presiding Judge, erred in holding that the defendant must be charged with the whole amount due upon the first timber contract, and fixing that amount at the sum of $980. 8. Because his Honor, the presiding Judge, erred in holding that the plaintiff is entitled to recover of the defendant the amount of $186.50, paid to Richie Riley and others.    9. Because his Honor, the presiding Judge, erred in holding that the plaintiff is entitled to recover of the defendant the sum of $15 charged as attorney's fee.    10. Because his Honor, the presiding Judge, erred in holding that the plaintiff is entitled to recover of the defendant the sum of $391, balance due on timber contract.    11. Because his Honor, the presiding Judge, erred in holding that when the defendant submitted a sworn statement of account in the form of debtor and creditor, it was necessary for defendant to go further and produce vouchers, or show the authority for making said charges, in the absence of testimony on the part of the plaintiff denying such authority or the correctness of the charges contained in said statement of account."

When a bank, and as for that matter an individual, who

has been placed in charge of money and bonds and leases of land which all belong to one of their customers, is called upon by such customer to account for this property, there is no excuse for the want of exactness in such accounting. The rule is not relaxed in the interest of a banking corporation. If anything, the rule is sterner on that account, for its business is to keep books showing in detail every transaction with its customers; still, while all this is true, the rules of law controlling the exercise of a discretion within the limits agreed upon between said bank and its customers in relation to any particular business, are the same for banks and natural persons. The plaintiff, Mrs. M. M. Riley, took a lease of one Mrs. Woodward for certain timber on a part of the plantation of the former, at $5 per acre, for 196 acres. This at $5 per acre amounted to $980; this amount of $980 was to be paid in instalments. To secure the payment of this amount, under the lease, a chattel mortgage on an engine and mill was executed by Mrs. Woodward to Mrs. Riley. When some of the instalments fell due, Mrs. Woodward failed to meet them, whereupon The Bank of Allendale, to whom the lease and the chattel mortgage had been assigned, agreed to extend the payment of part of instalments upon the assignment of five shares of stock in a manufacturing company and some other collaterals. Inasmuch as the amount collected by the bank under the lease of Mrs. Woodward did not amount to $980, Mrs. Riley, the plaintiff, seeks to hold the defendant responsible for the difference between the amount actually received and the $980. There does not appear in the testimony that the waiver by the bank of the payment of the instalments as fixed by the lease was made while Mrs. Woodward could have performed the same. Indeed, she allowed the mill and engine to be sold under the chattel mortgage before all the instalments under the lease matured. Besides, in April, 1894, just two months after the last instalment under the lease matured, Mrs. Riley made another contract with Mrs. Woodward for the timber on the same lands she had leased

to her in the year 1893, and received payment, to wit: $150, therefor.   Under such circumstances, we think the Circuit Judge was in error in charging the bank to a liability for the full $980, when, in fact, it only received $738.90 thereof. Thereupon we sustain the first exception.

So far as the second exception is concerned, we think it is immaterial whether the second timber contract was accepted in lieu of the first, so far as these parties litigant are affected. It is overruled.

The third exception has received close attention.   The Circuit Judge was correct if he meant to find that the note for $1,093.70 was the renewal of so much of the $1,700, as was left unpaid on the 17th April, 1894, as well as the note for $19, dated February 16th, 1893, and which matured on the 1st November, 1893.   A calculation of the interest on $1,700 and on $19 up to 17th April, 1894, after applying as credits the sums of $200 paid in March, 1893, by Mrs. Woodward, and applied by the bank to the two notes above described, and also the sum of $451.31, so applied as a credit to said sums, will show that this was a renewal of all then due.   But the note for $200, which was given to said bank by the plaintiff, Mrs. Riley, is an independent transaction from the note for $1,093.70, and is dated the same day, to wit: 17th April, 1894.   This exception is overruled.

The next exception involves much to the defendant bank. The account rendered by the bank was as follows: Mrs. M. M. Riley in account Bank of Allendale.   1893.   Feb. 10, to attorney's fee, $15.00; Feb. 16, to Bates & Simms, $1,547.47.   1894.   April 23, to R. W. Riley, $93.50; April 23, to R. W. Riley, $35.00; April 24, to G. O. Riley, $50.00; April 28, to account notes, $1,368.10; May 15, to G. O. Riley, $5.00; May 30, to S. L. Riley, $3.00.   1896.   Aug. 13, to R. W. Riley, $6.45—total, $3,123.48.   1893.   Feb. 10, by deposit, $1,545.00; Feb. 16, by cash ck., $17.43; Mch. 16, by deposit (Woodward), $200.00.   1894.   April 28, by deposit cash ck., $187.00; April 28, by deposit cash ck.,

$1,018.10; April 28, by deposit their saw mill, $150.00. 1896. July 22, by deposit, $6.45—total, $3,123.98. Personally appeared C. B. Farmer and made oath that the above is a true and correct statement of the account of Mrs. M. M. Riley, as taken from the books of the Bank of Allendale. C. B. Farmer. H. W. Montague, (L. S.) Notary Public.

April 16, 1899. Mrs. M. M. Riley to the Bank of Allendale: Note No. 1674, $1,700.00; note No. 1695, $19.00; note No. 2050, $1,093.70; note No. 2057, $200.00; attorney's fees, $15.00; paid Richie Riley and others, $186.50; overdue interest, $203.80; balance paid Mrs. Riley, $6.45— $3,424.45. By Woodward, $400.00; net sale chattels, $188.90; by Hiers' sale of timber, $150.00; by discount No. 2057, $187.00; by discount No. 2050, $1,018.10; by building and loan, $700.00; by Snelling, $780.45—$3,424.45. C. H. Hiers, President. E. & O. E.

We are not pleased with the method of stating the account employed by the defendant bank. The bank's vouchers should have been exhibited along with the said account. Still, the account was sworn to by the cashier of the bank. Besides, Mr. Hiers, the president of the bank, in his testimony, said the items were correct. We must say, however, that this accounting is not satisfactory; for it is proved by the bank itself that the only money the bank loaned the plaintiff was represented by four notes, to wit: one for $1,700, dated 10th February, 1893, and due 1st November, 1893; one for $19, dated February 16th, 1893, and due 1st November, 1893; one for $1,093.70, dated 28th April, 1894, and due December, 1894; and one for $200, dated 28th April, 1894, and due 15th October, 1894. In regard to the first two notes, to wit: one for $1,700.90 and one for $19. We have found both were paid, except the sum of $1,093.70, on the 28th April, 1894, and that this balance of $1,093.70 was secured by the third note. All that was due by the plaintiff to the defendant bank, on the 28th April, 1894, was two notes—one for $1,093.70 and the other for $200. It ought to be a simple matter to state the account

beginning on 28th April and running to 22d July, 1896—if we first determine the debits and credits. We are inclined to differ from the Circuit Judge in regard to the items: attorney's fees, $15, and Richie Riley and others, $186.50; for no doubt some attorney had to be paid to draft the papers, and this item was called, in the accounting, to the attention of the plaintiff, and she made no answer thereto; and so, also, the second item for $186.50, it is made up of two payments made on 23d April, 1894—one to R. W. Riley for $93.50, and the other to the same person for $35.00. Then on 24th April, 1894, G. O. Riley was paid $50; on May 15, 1894, G. O. Riley was paid $5, and on 30th May. 1894, S. L. Riley was paid $3.00, which aggregate $186.50. But the item for over due interest, $203.80, cannot be allowed, for there is no method of stating the items in the account which could justify any such charge. By this statement appears: The first note, given in 1894, due 1st November, 1894, is for $1,093.70; the second note, given in 1894, due October 15th, 1894, is for $200.00—$1,293.70. Upon this must be credited as collected from Mrs. Woodward, $200.00; net sales of chattels Mrs. Woodward, $188.90; Hiers sale of timber, $150.00; money received from Mrs. Riley through building and loan association, $700.00; money received from bond and mortgage of Snelling, $780.45—$2,019.35; leaving $725.60. From this deduct attorney's fees, $15.00; and items allowed, $186.50—$201.50; leaving $524.10. Add interest on $524.10 from 22d July, 1896, to 3d July, 1899, 2 years, 11 months, 11 days, $107.31; amount due 3d July, 1899, $631.41.

This statement shows that the account as stated by the Circuit Judge, wherein he allowed plaintiff a judgment against the defendant, on the 3d July, 1899, for $714.74, must be reduced to the sum of $631.41, with interest from 3d, July, 1899. We have allowed the fifth exception.

We find the sixth exception is not sustained, for there is no charge against the defendant for the $55, therein referred to. We have not sustained the Circuit Judge in regard to

the charge against the defendant for $980, under first contract with Mrs. Woodward. We have already sustained defendant's eighth exception; also its ninth and tenth exceptions. We have already considered the matter set up in exception eleven. It follows, therefore, that the Circuit Judge's decree for $714.74 must be reduced to $631.41, with interest from 3d July, 1899.

It is the judgment of this Court, that the judgment of the Circuit Court be modified by reducing the amount decreed to be paid to the plaintiff by the defendant to $631.40, and interest from July, 1899, and that the action be remitted to the Circuit Court to enforce the direction above given.